## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF VIRGINIA
### Roanoke Division

In re:

| | | |
|---|---|---|
| **BAYVIEW HOLDINGS, LLC** | ) | |
| | ) | **Case No. 09-72799** |
| **Debtor in Possession** | ) | |
| | ) | **Chapter 11** |
| **BANK OF FLOYD** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| v. | ) | **MOTION NO. _____** |
| | ) | |
| **BAYVIEW HOLDINGS, LLC** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>MOTION FOR RELIEF FROM STAY</u>

COMES NOW the Bank of Floyd (the "Bank"), by counsel, and states as follows in support of its Motion for Relief from Stay herein:

1.      The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(b)(2)(G). This is a core proceeding.

2.      This Motion is filed pursuant to 11 U.S.C. § 362(d)(1) and § 362(d)(2).

3.      On November 2, 2009 (the "Petition Date"), Bayview Holdings, LLC (the "Debtor") filed in this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, Case No. 09-72799 (the "Petition").

4.      The Bank is the holder of the only Allowed Secured Claim designated as the "Class 1" claim (the "Claim") in the Debtor's Third Amended Disclosure Statement (the "Disclosure").

5.      The Claim is evidenced by that certain Renewal Promissory Note dated January 28, 2010, payable to the Bank in the original principal sum of $2,571,287.35, which matured and became due and payable in full on July 28, 2010 (the "Note"). The Note is secured by that certain Deed of Trust dated June 28, 2007, which is recorded in the Clerk's Office of the Circuit Court for the County of Franklin, Virginia as Instrument 070006687, encumbering certain real property more particularly described therein (the "Deed of Trust"). Copies of the Note and Deed of Trust are attached hereto as **Exhibits A and B**, respectively.

6.      The real property encumbered by the Deed of Trust includes Lots 1, 2, 3, 8, 9, 10, 11, 15, 16, 17, 18, 22 Baywatch Estates and Lot 10, Emerald Bay Estates, all located in the County of Franklin, Virginia (collectively the "Lots" or "Collateral").

7.      The fair market value of the Collateral as of May 2, 2011 totals $2,750,000.00, as established by appraisals prepared by First Choice Real Estate Appraisers, Inc. dated May 2, 2011. This sum is significantly less than the Debtor's estimated value of $3,425,000.00 set forth in Section IV.A. of the Disclosure.

8.      The outstanding balance due under the Note as of June 16, 2011 totals $2,476,884.82, with approximately $13,000.00 in interest accruing each month.

9.      The Debtor is also contingently indebted to the Bank under the terms of that certain letter of credit dated June 28, 2007, in the amount of $162,732.00 (the "Letter of Credit").

10.     As of January 31, 2011, the balance due of unpaid real estate taxes assessed against the Collateral totaled $70,809.18 (the "Taxes"), with interest and penalties continuing to accrue.

11.     The sum of the outstanding balance due under the Note, the Bank's exposure under the Line of Credit and the Taxes totals $2,710,425.90.

2

12.     Additionally, the Bank will incur significant costs liquidating the Collateral.

13.     Accordingly, the Debtor effectively has no equity in the Collateral. As the Debtor is relying on equity in the Collateral, which is non-existent in this case, to fund its proposed Chapter 11 Plan (the "Plan"), the Collateral is not necessary for an effective reorganization. Therefore, termination of the automatic stay is appropriate pursuant to 11 U.S.C. § 362 (d)(2).

14.     Additionally, the success of the Plan depends entirely upon Debtor's ability to sell the lots that comprise the Collateral. Specifically, Debtor is required to sell two (2) lots during each twelve (12) month period following the Effective Date of the Plan in order for the Bank to consider renewal of the Note.

15.     In the twenty (20) months since the Petition Date, the Debtor has sold only one (1) lot, specifically Lot 12, Baywatch Estates.

16.     Furthermore, Lots 8 and 9, Baywatch Estates are currently listed for sale, as referenced in Section IV.H of the Disclosure. The listing prices are $299,000.00 and $399,000.00, respectively, which are significantly higher than their respective appraised values of $255,000.00 and $250,000.00, thereby diminishing the prospects for sale.

17.     In light of the fact that the Debtor has sold only one lot in a twenty month period, and the diminished prospects for sale of the Collateral resulting from the Debtor's current listing prices for the Collateral, cause exists for termination of the automatic stay as provided in 11 U.S.C. § 362 (d)(1).

WHEREFORE, the Bank respectfully requests the entry of an Order granting it relief from the automatic stay herein in order to enforce its rights in accordance with the Note, Deed of Trust and related loan documents, and affording to the Bank such other relief as is just and proper.

3

Respectfully submitted,

BANK OF FLOYD


By: /s/ G. Harris Warner, Jr.
　　Of Counsel


G. Harris Warner, Jr. (VSB #30098)
Sarah Jane Wells (VSB # 42558)
WARNER & RENICK, PLC
P. O. Box 21584
4648 Brambleton Avenue, SW
Roanoke, Virginia 24018
　　*Counsel for the Bank of Floyd*


## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of June, 2011, I served electronically the foregoing

Motion for Relief from Stay upon Bruce E. Arkema, Esq. @ barkema@durrettebradshaw.com and

Kevin J. Funk, Esq. @ kfunk@durrettebradshaw.com , the Office of the U.S. Trustee, 210 First

Street, Suite 505, Roanoke, Virginia 24011, Bayview Holdings, LLC, 70 Homeplace Circle, Moneta,

Virginia 24121 and on the same date, I electronically filed said Objection with John W. L. Craig, II,

Clerk, United States Bankruptcy Court.


　　　　　　　　　　　　　　/s/ G. Harris Warner, Jr.
　　　　　　　　　　　　　　Of Counsel


4

# RENEWAL

ENTERED FEB 1 1 2010

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $2,571,287.35 | 01–28–2010 | 07–28–2010 | 0106734800 | | | 201 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Bayview Holdings, L.L.C.
70 Homeplace Circle
Moneta, VA 24121

**Lender:**  Bank of Floyd
Floyd Office
101 Jacksonville Circle
P. O. Box 215
Floyd, VA 24091

### IMPORTANT NOTICE

THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.

**Principal Amount: $2,571,287.35**      **Initial Rate: 4.250%**      **Date of Note: January 28, 2010**

**PROMISE TO PAY.** Bayview Holdings, L.L.C. ("Borrower") promises to pay to Bank of Floyd ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million Five Hundred Seventy-one Thousand Two Hundred Eighty-seven & 35/100 Dollars ($2,571,287.35) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on July 28, 2010. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning February 28, 2010, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the New York Prime Rate as published in the Money Rate Section of the Wall Street Journal. If a range of rates is published, the highest will be used. (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.000 percentage point over the Index, rounded to the nearest 0.125 percent, resulting in an initial rate of 4.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $120.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Bank of Floyd, Floyd Office , 101 Jacksonville Circle, P. O. Box 215, Floyd, VA 24091.

**LATE CHARGE.** If a payment is 7 days or more late, Borrower will be charged **5.000%** of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution or termination of Borrower's existence as a going business or the death of any member, or a trustee or receiver is appointed for Borrower or for all or a substantial portion of the assets of Borrower, or Borrower makes a general assignment for the benefit of Borrower's creditors, or Borrower files for bankruptcy, or an involuntary bankruptcy petition is filed against Borrower and such involuntary petition remains undismissed for sixty (60) days.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding



EXHIBIT
A

# PROMISSORY NOTE
**(Continued)**

Loan No: 0106734800                                                              **Page 2**

and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest, together with all other applicable fees, costs and charges, if any, immediately due and payable, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Subject to any limits under applicable law, upon default, Borrower agrees to pay Lender's attorneys' fees and all of Lender's other collection expenses, whether or not there is a lawsuit, including without limitation legal expenses for bankruptcy proceedings.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Virginia.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the applicable courts for Floyd County, Commonwealth of Virginia.

**CONFESSION OF JUDGMENT.** Upon a default in payment of this Note at maturity, whether by acceleration or otherwise, Borrower hereby irrevocably authorizes and empowers Ronald Leon Moore as Borrower's attorney-in-fact to appear in the Franklin County clerk's office and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by a Construction Deed of Trust from Bayview Holdings, L.L.C. to the Bank of Floyd dated June 28, 2007.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: **Thomas W. Lovegrove, Managing Member of Bayview Holdings, L.L.C.** Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**ASSUMPTION. THIS NOTE MAY NOT BE ASSUMED.**

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Bank of Floyd, Floyd Office, 101 Jacksonville Circle, P. O. Box 215, Floyd, VA 24091.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.

## PROMISSORY NOTE
### (Continued)

Loan No: 0106734800

Page 3

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

BAYVIEW HOLDINGS, L.L.C.

By: _____ (Seal)
    Thomas W. Lovegrove, Managing Member of
    Bayview Holdings, L.L.C.

**BK 0915, PG 01261**

⊂T⬤ 00719 ④

**Century Title Services Inc.**
**4502 Starkey Road**
**Suite 1000**
**Roanoke, VA. 24018**

RECORDATION REQUESTED BY:
Bank of Floyd
Floyd Office
101 Jacksonville Circle
P. O. Box 215
Floyd, VA  24091

WHEN RECORDED MAIL TO:
Bank of Floyd
Floyd Office
101 Jacksonville Circle
P. O. Box 215
Floyd, VA  24091

Tax Map No:  030.00–025.00  (Part of)
             031.01–011.00
             032.10–010.00

FOR RECORDER'S USE ONLY

Page 1

This Deed of Trust prepared by:  Jan R. Rorrer, Loan Operations Department, Bank of Floyd

## CONSTRUCTION DEED OF TRUST

### THIS IS A CREDIT LINE DEED OF TRUST

**Maximum aggregate amount of principal
to be secured hereby at any one time: $3,145,811.00**

## Name and address of Noteholder secured hereby:

**Bank of Floyd
Floyd Office
101 Jacksonville Circle
P. O. Box 215
Floyd, VA  24091**

THIS DEED OF TRUST is dated June 28, 2007, among Bayview Holdings, L.L.C., whose address is 70 Homeplace Circle, Moneta, VA  24121 ("Grantor"); Bank of Floyd, whose address is Floyd Office , 101 Jacksonville Circle, P. O. Box 215, Floyd, VA  24091 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and RONALD LEON MOORE, a resident of Virginia, whose address is 101 Jacksonville Circle, Floyd, VA  24091 and DAVID THOMAS SEMLER, a resident of Virginia, whose address is 101 Jacksonville Circle, Floyd, VA  24091 ("Grantee," also referred to below as "Trustee"), either of whom may act.

CONVEYANCE AND GRANT. For valuable consideration, Grantor conveys, transfers, encumbers and pledges and assigns to Trustee for the benefit of Lender as Beneficiary, all of Grantor's present and

07 JUN 28 PM 4:07

070006687

EXHIBIT
B

BK 0915 PG 01262
DEED OF TRUST
(Continued)

Loan No: 0106734800                                                          Page 2

---

future right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; and all rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in FRANKLIN COUNTY, Commonwealth of Virginia:

   See attached "Exhibit A"

The Real Property or its address is commonly known as  28 acres, Lakewood Forest Road, Moneta VA  24121; Lot 10, Strawberry Banks Drive, Moneta VA  24121; 6.83 acres Cooper/Emerson Tract, Moneta VA  24121; Lot 94 Lakewood Forest Road, Moneta, VA  24121.

**FUTURE ADVANCES.** In addition to the amounts specified in the Note, this Deed of Trust also secures future advances.

Grantor presently, absolutely, and irrevocably assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE   (A)   PAYMENT OF THE INDEBTEDNESS AND   (B)   PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.   THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF GRANTOR'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN GRANTOR AND LENDER OF EVEN DATE HEREWITH.  ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Note, this Deed of Trust, and the Related Documents.

**CONSTRUCTION MORTGAGE.** This Deed of Trust is a "construction mortgage" for the purposes of Sections 9-334 and 2A-309 of the Uniform Commercial Code, as those sections have been adopted by the Commonwealth of Virginia.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

   **Possession and Use.** Until the occurrence of an Event of Default, Grantor may   (1)   remain in possession and control of the Property; (2)  use, operate or manage the Property; and (3)   acting as Lender's agent, collect the Rents from the Property.

   **Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

   **Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During

BK 0915 PG 0263

**DEED OF TRUST**
**(Continued)**

Loan No: 0106734800

Page 3

the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold

BK 0915 PG 01264

**DEED OF TRUST**
**(Continued)**

Loan No: 0106734800

Page 4

compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are necessary to protect and preserve the Property.

**Construction Loan.** If some or all of the proceeds of the loan creating the Indebtedness are to be used to construct or complete construction of any Improvements on the Property, the Improvements shall be completed no later than the maturity date of the Note (or such earlier date as Lender may reasonably establish) and Grantor shall pay in full all costs and expenses in connection with the work. Lender will disburse loan proceeds under such terms and conditions as Lender may deem reasonably necessary to insure that the interest created by this Deed of Trust shall have priority over all possible liens, including those of material suppliers and workmen. Lender may require, among other things, that disbursement requests be supported by receipted bills, expense affidavits, waivers of liens, construction progress reports, and such other documentation as Lender may reasonably request.

**DUE ON SALE – CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease–option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty–five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Virginia law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a

BK 0915 PG 0265

**DEED OF TRUST**
**(Continued)**

Loan No: 0106734800

Page 5

foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $5,000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may require. Policies shall be written in form, amounts, coverages and basis acceptable to Lender and issued by a company or companies acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. The Real Property is or will be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area. Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $500.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their

BK 0915  PG 01266

**DEED OF TRUST**

Loan No: 0106734800                      (Continued)                               Page 6

receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants generally that: (a) Grantor holds good and marketable title to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

BK 0915 PG 01267

**DEED OF TRUST**

Loan No: 0106734800

**(Continued)**

Page 7

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the

BK 0 9 1 5 · PG 0 1 2 6 8

**DEED OF TRUST**

Loan No: 0106734800                              **(Continued)**                                    Page 8

═══════════════════════════════════════════════════════════════════════════

Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place convenient to Lender and make it available to Lender promptly following Lender's request to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Grantor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to

BK 0915 PG 01269

**DEED OF TRUST**
**(Continued)**

perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender

BK 0915, PG 01270

**DEED OF TRUST**

Loan No: 0106734800
**(Continued)**

Page 10

believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay. This right is in addition to all other rights given to holders of promissory notes under Title 55 of the Code of Virginia.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law. Grantor expressly waives and releases any requirement or obligation that Lender or Trustee present evidence or otherwise proceed before any court or other judicial or quasi–judicial body as a precondition to or otherwise incident to the powers of sale authorized by this Deed of Trust. The proceeds of sale shall be applied by Trustee as follows: (a) first, to pay all proper advertising expenses, auctioneer's allowance, the expenses, if any, required to correct any irregularity in the title, premium for Trustee's bond, auditor's fee, attorneys' fees, and all other expenses of sale incurred in or about the protection and execution of this Deed of Trust, and all moneys advanced for taxes, assessments, insurance, and with interest thereon at the rate provided in the Note, and all taxes and assessments due upon the Property at time of sale, and to retain as compensation a reasonable Trustee's commission; (b) second, to pay the whole amount then remaining unpaid on the Indebtedness; (c) third, to pay liens of record against the Property according to their priority of lien and to the extent that funds remaining in Trustee's hands are available; and (d) last, to pay the remainder of the proceeds, if any, to Grantor, Grantor's heirs, personal representatives, successors or assigns upon the delivery and surrender to the purchaser of possession of the Property, less costs and expenses of obtaining possession.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney–in–fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all

BK 0915 PG 01271

**DEED OF TRUST**

Loan No: 0106734800

**(Continued)**

Page 11

or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least fourteen (14) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post–judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, a reasonable Trustee's commission and reasonable attorney fees incurred by the Trustee in performing its duties under the Deed of Trust, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee (and each of them if more than one) shall have the power to take the following actions with respect to the

BK 0915, PG 01272

**DEED OF TRUST**
**(Continued)**

Loan No: 0106734800

Page 12

Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, at any time hereafter and without prior notice and without specifying any reason, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office in the jurisdiction where this Deed of Trust has been recorded. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name of the successor trustee and the county, city or town in which he or she resides, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Power to Act Separately.** If more than one Trustee is named in this Deed of Trust, any Trustee may act alone, without the joinder of any other Trustee, to exercise any or all the powers given to the Trustees collectively in this Deed of Trust or by applicable law.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, if hand delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No

BK 0915 PG 0273

**DEED OF TRUST
(Continued)**

alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the Commonwealth of Virginia.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the applicable courts for Floyd County, Commonwealth of Virginia.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

BK 0915 PG 01274

**DEED OF TRUST**
**(Continued)**

Loan No: 0106734800

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the Commonwealth of Virginia as to all indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Bank of Floyd, and its successors and assigns.

**Borrower.** The word "Borrower" means Bayview Holdings, L.L.C. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means Bayview Holdings, L.L.C..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

BK 0915 PG 01275

**DEED OF TRUST**
**(Continued)**

Loan No: 0106734800

Page 15

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Bank of Floyd, its successors and assigns.

**Note.** The word "Note" means the promissory note dated June 28, 2007, **in the original principal amount of $3,145,811.00** from Grantor to Lender, together with all modifications of and renewals, replacements, and substitutions for the promissory note or agreement. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Ronald Leon Moore, whose address is 101 Jacksonville Circle, Floyd, VA  24091 and David Thomas Semler, whose address is 101 Jacksonville Circle, Floyd, VA 24091 and any substitute or successor trustees.  If more than one person is named as trustee, the word "Trustee" means each such person.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.**

**THIS DEED OF TRUST IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DEED OF TRUST IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

BK 0915 PG 01276

Loan No: 0106734800

**DEED OF TRUST**
**(Continued)**

Page 16

**GRANTOR:**

**BAYVIEW HOLDINGS, L.L.C.**

By: _____ (Seal)
Thomas W. Lovegrove, Managing Member of Bayview
Holdings, L.L.C.

---

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF ___Virginia___ )
                                              ) SS
COUNTY OF ___Roanoke___ )

On this ___28th___ day of ___June___, 20 07, before me, the undersigned
Notary Public, personally appeared **Thomas W. Lovegrove, Managing Member of Bayview Holdings,
L.L.C.**, and known to me to be a member or designated agent of the limited liability company that
executed the Deed of Trust and acknowledged the Deed of Trust to be the free and voluntary act and
deed of the limited liability company, by authority of statute, its articles of organization or its operating
agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized
to execute this Deed of Trust and in fact executed the Deed of Trust on behalf of the limited liability
company.

By ___Heidi H. Turpin___ Residing at ___Salem, VA___

Notary Public in and for ___the above jurisdiction___ My commission expires ___2/28/10___

My registration number is

```
HEIDI H. TURPIN
NOTARY PUBLIC
Commonwealth of Virginia
Reg. #227602  2/28/10
My Commission Expires
```

LASER PRO Lending, Ver. 5.17.00.005 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved. - VA c:\NFSNCFN2\LG00.FC VR-1293 PR-27

BK 0915 PG 01277

## EXHIBIT A

### PARCEL 1:

Beginning at a set 1/2" iron rebar located on the northerly side of Lakewood Forest Road, Virginia Route #949, and being the southwesterly corner of Lot 99, Lakewood Forest Subdivision; thence with the northerly side of Virginia Route 949 the following courses and distances: S. 57° 53' 41" W. 83.52 feet, thence a curve to the right whose radius is 874 feet and whose chord bearing and distance is S. 62° 15' 31" W. 97.07 feet, an arc distance of 97.12 feet; thence S. 65° 26' 31" W. 164.44 feet, thence a curve to the right whose radius is 200.00 feet and whose chord bearing and distance is S. 77° 35' 31" W. 84.19 feet, an arc distance of 84.82 feet, thence S. 89° 44' 31" W. 258.54 feet, thence a curve to the left whose radius is 925.00 feet and whose chord bearing and distance is S. 88° 12' 31" W. 49.50 feet, an arc distance of 49.51 feet, thence S. 86° 40' 31" W. 235.38 feet, thence a curve to the right whose radius is 200.00 feet and whose chord bearing and distance is N. 48° 42' 59" W. 280.90 feet, an arc distance of 311.42 feet, thence N. 18° 19' 58" W. 78.11 feet, thence N. 31° 09' 41" W. 44.65 feet, thence N. 51° 20' 25" W. 45.70 feet, thence N. 67° 40' 41" W. 38.59 feet, thence N. 80° 18' 11" W. 45.09 feet, thence N. 89° 27' 16" W. 71.26 feet, thence S. 85° 49' 22" W. 58.29 feet, thence S. 83° 29' 43" W. 118.50 feet, thence S. 82° 20' 15" W. 138.38 feet, thence S. 82° 58' 33" W. 148.26 feet, and S. 82° 59' 52" W. 72.09 feet, thence leaving the northerly side of Route 949, N. 20° 03' 27" E. 571.08 feet to a 1 3/4" iron pipe, thence S. 74° 10' 17" E. 465.02 feet to a found iron, thence N. 87° 04' 40" E. 58.60 feet to a set 1/2" iron rebar, thence N. 82° 34' 18" E. 277.18 feet to a found iron located on the 800' contour line of Smith Mountain Lake, thence with the 800' contour line of Smith Mountain Lake the following courses and distances: S. 07° 14' 24" W. 93.36 feet, S. 09° 33' 25" E. 87.99 feet, S. 26° 45' 16" E. 53.17 feet, N. 26° 11' 57" E. 82.71 feet, S. 49° 27' 04" E. 128.90 feet, and N. 48° 19' 00" E. 103.71 feet to a set 1/2" iron rebar located on the 800' contour line, thence leaving the 800' contour line N. 83° 30' 29" E. 155.19 feet to a set 1/2" iron rebar located on the 800' contour line, thence with the 800' contour line the following courses and distances: S. 68° 46' 50" E. 43.27 feet, S. 46° 41' 22" E. 70.95 feet, S. 27° 15' 07" E. 57.75 feet, S. 03° 00' 15" E. 51.63 feet, S. 70° 45' 34" E. 18.17 feet, S. 49° 27' 52" E. 49.59 feet, S. 27° 28' 03" E. 96.77 feet, S. 53° 15' 18" E. 54.36 feet, S. 39° 54' 26" E. 18.54 feet, N. 12° 20' 05" W. 46.07 feet, N. 03° 44' 13" W. 115.61 feet, N. 05° 22' 42" E. 76.37 feet, and N. 02° 06' 17" E. 124.74 feet to a found iron, thence N. 83° 27' 22" E. 14.93 feet to a set 1/2" iron rebar, thence leaving the 800' contour line N. 83° 27' 22" E. 203.00 feet to a found iron, thence N. 34° 58' 20" E. 243.38 feet to a set 1/2" iron rebar located on the 800' contour line, thence with the 800' contour line the

following courses and distances BK 0 9 5 5 P G 0 1 2 9 N 31° 29' E. 40.37 feet, S.
46° 15' 37" E. 93.99 feet, S. 57° 10' 35" E. 62.69 feet, S. 49° 25'
07" E. 42.83 feet, S. 57° 12' 56" E. 73.33 feet, S. 86° 19' 20" E.
21.59 feet, N. 07° 13' 04" W. 64.68 feet, N. 21° 18' 17" W. 79.58
feet, N. 11° 32' 02" W. 94.76 feet, N. 01° 57' 37" E. 83.61 feet,
N. 30° 24' 47" E. 57.78 feet, N. 49° 28' 20" E. 68.71 feet, and N.
73° 02' 17" E. 69.04 feet to a set 1/2" iron rebar located on the
800' contour line and on the westerly side of Cardinal Cove Lane,
a 30' private right of way, thence with the westerly side of
Cardinal Cove Lane S. 37° 52' 29" E. 266.18 feet to a point, thence
with the northwesterly boundary of Lots 93 through 99 of Lakewood
Forest Subdivision, S. 33° 47' 31" W. 1,049.32 feet to the place of
beginning and containing 30.433 acres, more or less, and being
shown on that certain Plat of Survey for Pamela H. Ferguson, dated
October 28, 1999 made by Philip W. Nester, Certified Land Surveyor;
**excepting however therefrom** the land within the bounds of a certain
cemetery containing 0.066 acres and being described as: Beginning
at a point which is located the following courses and distances
from the same point of beginning as the 30.433 acres described
above, which is the southwesterly corner of Lot 99, Lakewood Forest
Subdivision, thence along the northerly side of Lakewood Forest
Road, Virginia Route 949 the following courses and distances: S.
57° 53' 41" W. 83.52 feet to a point, thence with a curve to the
right whose radius is 874.00 feet and whose chord bearing and
distance is S. 62° 15' 31" W. 97.07 feet an arc distance of 97.12
feet, thence S. 65° 26' 31" W. 164.44 feet to a point, thence a
curve to the right whose radius is 200.00 feet and whose chord
bearing and distance is S. 69° 05' 31" W. 25.05 feet an arc
distance of 25.07 feet to a point, thence leaving the northerly
side of Virginia Route 949 and along the westerly side of a new
proposed street to be named Baywatch Drive and being shown on the
proposed Plat of Baywatch Subdivision on file with the Franklin
County Planning and Community Development office, N. 24° 29' 54" W.
191.98 feet, thence leaving the westerly side of proposed Baywatch
Circle, N. 77° 20' 56" W. 100.30 feet to the actual place of
beginning of the cemetery, thence from such actual beginning point,
S. 56° 01' 36" W. 59.68 feet to a point, thence N. 51° 58' 20" W.
51.71 feet to a point, thence N. 55° 18' 34" E. 55.88 feet to a
point, and S. 55° 36' 24" E. 53.66 feet to the actual place of
beginning and containing within the cemetery 0.066 acres, more or
less, and including the right of ingress and egress to and from the
said cemetery to Virginia Route 949.

The Grantor does quitclaim and convey unto the Grantee any and all
right, title and interest, including such easement rights she may
have in and to the land adjoining the property herein conveyed and
lying below the 800' contour line and the waters of Smith Mountain
Lake, as were excepted by, and are more particularly set forth and
described in that certain Report of Commissioners and Order Vesting
Title in Petitioner in the condemnation proceedings in the Circuit

Court of Franklin County, Virginia, under the style of Appalachian Power Company v. Catherine Marsh Hurt, dated November 11, 1961 and recorded in the Clerk's Office of the Circuit Court in Franklin County, Virginia in Deed Book 190, pages 240 through 247, subject however to any and all rights acquired by Appalachian Power Company in the aforesaid proceedings and order, **excepting and reserving however** unto the Grantor such easement rights that were so excepted as to the land lying below the 800' contour, and the waters of Smith Mountain Lake, which are appurtenant to the property hereinafter described as "Grantor's Retained Parcel" to be reconveyed to the Grantor immediately following the conveyance by this deed.

The Grantor does further quitclaim and convey unto the Grantee the area of the cemetery as hereinabove described containing 0.066 acres, more or less, and any ingress and egress thereto.

BEING the same property conveyed unto Bayview Holdings, LLC, a Virginia Limited Liability Company, by deed dated June 22, 2007, from Pamela Marsh Hurt Ferguson, said deed to be recorded in the Clerk's Office of the Circuit Court for the County of Franklin, Virginia, contemporaneously herewith.

**PARCEL 2:**

LOCATED in the County of Franklin, Virginia, and more particularly described as Parcel "E" according to the Plat of Survey Made for Mrs. W. L. Sibley Showing Proposed New Lines in Property of Walter L. Bobbitt & Thurzetta Thomason Bobbitt and Grover Otis Delong being 6.83 +/- Acres bounded by Corners 27-28-Q-P-N-27 with 0.8 +/- acres above 800 Ft. Contour Line of Smith Mountain Lake; and

**PARCEL 3:**

All that certain tract or parcel of land being known and designated as Lot No. 94, according to the plat of Lakewood Forest Subdivision by Erskine W. Proffit, C.L.S., dated July 29, 1961, and recorded in the Clerk's Office of the Circuit Court of Franklin County, Virginia, in Map Book 2, Page 203;

SUBJECT TO Restrictions of record in the Clerk's Office of the Circuit Court of Franklin County, Virginia, in Deed Book 200, page 484, and as set forth on the aforesaid Plat of record in Map Book 1, Page 203.

Parcels 2 and 3 BEING the same property conveyed unto Bayview Holdings, LLC, a Virginia Limited Liability Company, by deed dated June 22, 2007, from Pamela Marsh Hurt Ferguson, said deed to be

recorded in the Clerk's Office of the Circuit Court for the County of Franklin, Virginia, contemporaneously herewith.

**Parcel 4:**

Lot 10, containing 2.470 Acres, Emerald Bay Estates, as shown on that survey dated July 27, 2006, of record in the Clerk's Office of the Circuit Court for Franklin County, Virginia, in Deed Book 864, at Pages 1976 and 1977; and,

Together with rights in and to the waters of Smith Mountain Lake; and

Together with rights in and easement to use Drainfield "F"; and

BEING part of that property described in Deed Book 804 at Page 6, and in that Deed of Correction of Record in Deed Book 821 at Page 510, of record in the aforesaid Clerk's Office.

INSTRUMENT # D700006687
RECORDED IN THE CLERK'S OFFICE OF
FRANKLIN COUNTY ON
July 25, 20 07 AT 4:07pm
ALICE S. HALL, CLERK

BY: _____ (DC)